3-1-0, 2-2-6-0, Merrily, Kirkpatrick, et al. Appellees by name and statement, v. Illini Manors, Inc. and Illini Manors. Appellants by Kevin Miller and Jonathan Lawrence. And Mr. Miller, you'll initiate the discussion here. Good morning, and may it please the court, I'm Kevin Miller. I represent the defendant. We are actually known as UDI No. 10, LLC. Doing business as Pekin Manor Nursing Home. We've been listed as the Illini Manors, Inc. or Pekin Manors, but our correct name is UDI No. 10, LLC. We have before us today a rather narrow issue. The facts are very brief, can be briefly stated. This is an action under the Illinois Nursing Home Care Act for personal injuries and wrongful death and recovery of medical expenses as well. We know that Charles Curto was a resident of the nursing home. He was admitted pursuant to a written contract that was signed by his wife. He did not sign it. There was also an arbitration agreement that was signed by the wife as well. In the court below, we filed a motion to compel arbitration to enforce the arbitration agreement to take us out of litigation and into private arbitration. That motion was denied by Judge Grant in Tazewell County because, as we know, the marital relationship itself, in and of itself, does not confer an agency status of one spouse for the other. The question, therefore, that was appealed is whether or not the trial court correctly dealt with that question. And at the outset, of course, we know that there is another case dealing with the identical contract form that this appellate court decided. I believe Justice Wright authored the opinion. The Peterson case versus residential alternatives. And if I could, I'd like to just deal with that right off the bat and tell you our position on why it should not or does not apply. After you compliment us on writing that. Of course. Of course. I'm not here to say it was incorrectly decided. I understand. I understand. Thank you, Justice. But what I think we have here is the argument was not raised in the court below. And whether it's called a waiver or forfeiture, I think that is the application that we have to get the Peterson case. Not only was it not raised below, but there's actually a position taken in the appellate brief, the appellee brief here, which says just the opposite. When the appellee's attorney looked at the two different contracts, which, by the way, are appended in the reply brief for your convenience. When he looked at them, he said that there's no other conclusion to draw other than they were meant to be read together, a differing interpretation. But I also know that waiver and forfeiture are binding on the lawyers. But the rule of law is not binding on the court. You can hold us to it. But of course, if you feel the need to decide it on the Peterson case, you are able to do that. I don't think you should for this reason. We have here today a question of first impression. And it's an important one. As families make that decision, that very difficult decision to admit a loved one to a nursing home, it's not something that's done easily. It's something that oftentimes is done by a child of the resident, by a spouse. The signature on the contracts are often not the resident himself or herself. And we will be most likely seeing this issue from time to time again. If, on the other hand, you have the Peterson case and you choose to apply that analysis here, what you're going to have is, I'm guessing, a decision that has probably no new precedential value outside of Peterson. Peterson's already been decided, which said that the contracts don't refer to each other adequately enough. And we have that very well-reasoned decision from the appellate court already. Doing it again just doesn't add anything. On the other hand, if we enforce the waiver or the forfeiture rule here, then what we have is an opportunity to contribute to the body of law that will advance us as nursing home contracts and arbitration agreements reach the appellate court. And I've decided more in the lower courts as well. So I'm encouraging the court here to not waive the waiver rule, but to apply it here and address the underlying issue. And that is whether the court dealt correctly below with the issue of whether one spouse in this circumstance has bound the other. Both our brief and my opponent's brief I think very adequately point out that the issue has been dealt with in a number of other jurisdictions. And you see a wide variety of results, even among or in different states. We can each point to Florida, for example, who's decided the case one way or the other. And since this is a case of first impression, I suspect that you have the opportunity to decide the case on whichever legal basis or analysis you so choose. In doing so, I'm simply hoping that you will do it consistently, whether you look at the apparent agency rules, the agency rules, third party beneficiary rules, whichever analysis you choose. And I'm not here to necessarily urge one over the other. But do so consistently when you approach the two signatures on these documents. And by that I mean this. Mrs. Curto signed the nursing home contract by which her husband was admitted to the nursing home. And her signature meant something on that contract. And we know that's true because we look at the complaint. This is a motion to dismiss. We consider all well-pled facts as true. One of those facts is that he, in fact, was admitted and did receive the benefits of the nursing home services. So we know that on at least the initial five-page contract, her signature meant something. Be consistent there when you then turn to the arbitration agreement. Her signature is there also. It has to mean something. It couldn't just be there for no reason at all. When I think of alternative pleading or raising alternative arguments, that's done all the time. We often think that it's either this position, but if not, it's the other. Couldn't she be a responsible party without being a guardian or a trustee or whatever of assets? Certainly can, sure. In terms of getting him into the nursing home, having that agreement that he's going to pay X dollars and go get some Y services. You mean a responsible party simply in terms of being a guarantor? No, no, not at all. That's not a good thing. A responsible party in terms of saying, here's my husband, he needs help. Will you give it to him? And the nursing home responds, yes, if you pay us X dollars a month or whatever it is, and they've got agreement and the money's paid. Certainly so. Without being a legal guardian or having that legal responsibility. Right. I think you don't have to have the paperwork, so to speak, to have that position. You simply can be an agent, an actual or a parent agent. And I think that's exactly what she was doing. When she said, here is my husband, I'd like to put him in the nursing home, she signs these documents. And as a matter of fact, Your Honor, in the nursing home contract itself, she's listed either there as guardian slash responsible party. I think that's what you're saying. Does she have to be a legal guardian or a legal power of attorney or power of attorney for health care? Or can she simply be a responsible party who says, I have authority to put my husband here, to put us on the hook for the financial charges, and also to bind you to certain agreements as well. And I think that's exactly what she's doing. That's what her signature means on the contract. Let's say she's only binding herself, though. Clearly, her signature means something, right? My opponent has taken the alternative positions that she was not signing as a responsible party or as a representative capacity. That makes no sense. Either she is a responsible party with the authority or the apparent authority to put her husband in the nursing home, or she has authority to sign it for herself or her individual claims. Remember, there are essentially three types of claims presented here. One under the Nursing Home Care Act, belongs solely to the resident. Survival Act allows that to survive his death. The other claims are the wrongful death, where she is the real party in interest, and also the Family Expense Act, where she is the real party in interest, too. She has a signature there saying, I'll arbitrate or we'll arbitrate or somebody will. So it's either she has the authority to bind her husband as well, or she has the authority to bind hers, but don't approach the case. At least I urge you not to approach the case in a way that her signature means nothing, that she has no authority to bind herself or her husband. That just doesn't make sense, especially when we see the actual results of what her signature meant on the first five pages. She did have authority to do something. She had authority to put her husband in the nursing home, to commit the nursing home to certain responsibilities, to commit her husband as well to certain responsibilities while he was a resident in the nursing home. I'm just urging a consistent approach. And I know that that isn't the crux of the issue, but had he been found to be incompetent? Had he been a physical disability? I mean, how is it that she had that authority to commit him to the nursing home? The reaction? Because we know that just being a spouse doesn't give her the actual authority to do that, and I'll acknowledge that. But I think to answer your question, how does she have authority, I think you have to look at the circumstantial evidence, which I don't think the trial court below looked at. She is a loved one. There is a medical need. She is trying to fulfill that medical need for her husband, and she's making arrangements to do so. If I simply brought a friend of mine to the nursing home and said, please admit him, I don't think anybody would say I might have apparent authority to do that for a friend or a neighbor. But when it's a family situation and when there's a present medical need, and when the one in need actually accepts those services that are given pursuant to the contract, I think there's plenty of evidence there. Circumstantial. But plenty of evidence to say there was authority to get the ball rolling into putting him in the nursing home. And that was my disappointment with the trial court. I think the trial court identified the correct point of law, but simply didn't go far enough to apply. The trial court only said just the marital relationship alone doesn't give us an agency or an apparent agency.  But there is a little more to the rule. We can still look at circumstantial evidence to see, A, authority or apparent authority, or B, ratification. What would ratification be? Acceptance of that contract that was entered into for your benefit. That's exactly what he did here. He became a resident of that nursing home. So when the trial court said below there's no evidence of ratification or no evidence of agency, that's where we disagree. And that's what we want to bring to your attention. We also urged a third-party beneficiary analysis. Maybe it makes sense to you folks. Maybe it doesn't. Other courts have used it. Other courts have rejected it. But I think it makes some sense here as well. Wife brings her husband in. He's obviously in need of nursing home care. She signs the contract for whose benefit? For his. He's obviously an intended beneficiary. So I know my remarks are brief, and I'm happy to leave them that way. Again, I just want to encourage you folks as you consider the issue to be consistent with those two signatures. Two documents, two signatures. The signature on the main contract where he was admitted meant something. We think it has to mean something on the arbitration agreement as well. Assuming, of course, that the Peterson case was not the case. Is there a petition for leave to appeal in that case? I'm sorry? Is there a petition for leave to appeal in the Peterson case? No. No, and this court has already remanded it back to the trial court for the proceedings. Once you sit down, if you could, during your rebuttal remarks, just direct me to the page in the brief where you believe that your opponent has conceded the two documents should be read as one. I can't find it quickly up here. I have it here now. Okay. It is in the Appellee's brief on pages 18 to 19. I believe it starts at the bottom of page 18, goes to 19. And then I'm struggling a little bit because it's hard for me to think of these two signatures as merging into one document. So, as I view them separately as two documents, if we found that her signature meant something on the residential care contract, that really doesn't help you enforce the arbitration clause as a separate agreement, does it? I think it does. I'm sorry I don't know where you're coming from on this. If one signature... I'll try to repeat it and see if I got it. One signature might mean something, but the second signature means nothing at all? Well, because the documents don't refer to each other. So the first signature means she agrees to pay as long as the nursing home houses her husband. She's responsible for that. He stays there. He ratifies that by staying there. But the other signature, because the topic of the agreement isn't so clear, agreement to arbitrate what? And that goes to the core of the Peterson case. That signature may mean something that she signed it, but how do you get to the point that he ratified that agreement to arbitrate? He may have ratified the agreement to stay in the nursing home. That's what I'm struggling with. All right. Thank you for the opportunity. Counselor, you have two minutes. Thank you. He may need more. You know, I see in, for example, other nursing home contracts where there are options to choose from. For example, does the resident want barber and beauty care? Will the resident have an account here for incidental expenses? Will the resident use the in-house medical physician or will the resident have his or her own? And there are options to check there. I see this contract, which is required by the Illinois Nursing Home Care Act to be a separate document. An arbitration agreement has to be separate. Has to be by statute. I see it as just one of those options which you can either choose or not to choose. But how do we know he was aware of it? We don't on this record. What I am looking at is was it ratified by action, by accepting the nursing home care? Or was it, was there evidence of agency or parent agency by the wife signing it as, I don't want to misquote her, but our form listed her as resident representative. In other words, the nursing home, I think, has some entitlement to know that when these documents are being pushed across the table and signed, that the person on the other end of them has some authority, some representative capacity to sign them. Thank you. Thank you, Your Honor. I appreciate it. Thanks very much. Thank you very much, Mr. Miller. Mr. Friedman. Thank you. This is the court. Matthew Friedman on behalf of the plaintiff appellee. I, just starting off, it's very clear here that the defendant's arguing that this court can decide or needs to decide this case because of its precedential value. And I suppose this court could decide this case on both grounds, saying that the Peterson case applies in this particular case and rule, and also decide the issue of agency in regards to the wife and whether the husband ratified, somehow ratified this agreement. But I'm having trouble wrapping my mind around how you really can get to the issue of agency if the arbitration agreement isn't any good in the first place, because under Peterson, the arbitration agreement and the nursing home contract failed to incorporate each other. So, you know, I agree with Justice Wright that, you know, I just don't see how you can get to the entire issue of agency in the first place if Peterson applies here. Unless you forfeited the argument that these two agreements should be construed separately. Right. I was going to get to that. The, you know, first of all, the entire waiver issue, you know, frankly, I feel that the defendant has waived their waiver argument because they've never, they never objected to us filing a motion to adding the Peterson case as, to citing the Peterson case as additional authority here. But despite that, I mean, if you look at cases like in Montes v. Mao, it's a First District case, 398, Illab, 3rd, 424. Quote, waiver is a limitation on the parties and not on the court. And we may consider an issue not raised in the trial court if the issue is one of law and is fully briefed by the parties. Both parties here had a chance to brief it, and this is really an issue of law here as to whether the Peterson case applies in this particular case. And I, and so I don't think waiver is an issue here. I guess the problem that I have with the waiver issue is you did not assert to the trial court that these are separate agreements. Right. I, you know, first of all, the Peterson case had not come down yet. So there was no precedent for me to cite to. I mean, I would have had to make, again, a novel legal argument. And I didn't have the fortune of having your decision to cite to at that time. And I don't think the plaintiff should be penalized for it. But, you know, the appellate court can consider an issue not raised in the trial court where necessary for a just result and for the maintenance of sound and uniform body of precedent. And I'm going to stay citing to it. There's a third district decision of standard mutual versus Mudrone, M-U-D-R-O-N. It's 358 Gillette 3rd, 535. It's a 2005 decision. It's also a Supreme Court case of the estate of Thump, 221, 07, 30. It's a 2006 decision. So this court has the authority to consider issues that weren't raised in the trial court just to maintain a uniform body of precedent and, frankly, just for a just result. And in this particular case, it would be, you know, it would be unjust if we didn't apply the Peterson case. And we have, as the defense acknowledges, identical forms, identical contracts, identical arbitration agreements, identical facts, basically, as the Peterson case. You just have, you would have a completely inconsistent result if you didn't consider the Peterson decision. Now, the defendant also argues that, you know, in my particular brief, you know, we stated that the, that, you know, we made conflicting arguments in our brief that conflicted with the holding in Peterson. First of all, there's no rule against us making alternative legal arguments and raising alternative theories. But if you read that portion of the brief on page 18 and 19, page 18 and 19 of my brief, it's, the thrust of our argument in that portion of the brief was that the nursing home contract and the arbitration agreement are vague. And that's exactly what the trial court pointed out. And that they failed to mention that, you know, that, first of all, our argument was that they failed to mention that the, that this applied to, or that the plaintiff was agreeing to arbitrate nursing home care act disputes or wrongful death claims or medical malpractice claims. All it says is, you know, we will, you know, you agree to arbitrate all disputes arising here under. You know, it's very, extremely vague. Again, it doesn't incorporate the nursing home care contract or anything. But again, it's extremely vague. And that's, that's the argument we were making here. At best, we were arguing in, on page 18, 19, we were trying to say is that at best, the arbitration agreement was saying that we, the parties were agreeing to arbitrate disputes over maybe some of the financial arrangements in the nursing home care contract. But it didn't say anything about disputes under the nursing home care act or wrongful death claims or anything or any type of tort claim. If you look at the Fossler case, for example, that was recently decided, that came out of the second district, but was decided by the Supreme Court. In Fossler, the nursing home care contract had an arbitration agreement contained in it. And it specifically said that the parties agreed to arbitrate nursing home care act disputes, wrongful death claims, medical malpractice claims. It was very specific so that all the parties, plaintiffs, defendants, patient, all knew what they were signing and knew what would be subject to arbitration. And obviously, I think it's axiomatic that, you know, if there's any ambiguities that they must be interpreted in favor of the non-drafted party. Now, the defendant argues that, you know, that the wife here is, you know, is a responsible party, that she's, that her signature really has to mean something on these particular contracts. If you decide the Peterson case doesn't apply here, it's, you know, the nursing home in this particular case, yeah, could have made sure that the husband was present when the contracts were signed at the very least so that he could have, just by being present, possibly ratified the agreements. Maybe that wouldn't be enough. But at the very least, maybe gotten a power of attorney or get health care from him. What if he was in a advanced state of dementia or middling state? Well, we don't know. What if he couldn't relate to a competency of any of those proceedings? Well, we don't know. And, you know, obviously, she would have to get... We don't know in these facts. Right. We don't know under these... General question. We don't know under these particular facts. You know, the problem is that the defendant never asked for an evidentiary hearing. He never filed a 191B affidavit asking for discovery in this particular case or asking or even doing a motion to reconsider the trial court and filing a 191B affidavit, which I think he could have done if he felt that the trial court wasn't considering all the facts that he felt were out there and were discoverable. The trial court did the best it could under the circumstances based on the facts that were presented, which is just the nursing home care contract and the arbitration agreement. And those are the facts. Those are all... That was all the evidence they had to forward. So I don't... There's really nothing... You know, that's all the trial court had to base its decision on, and that's all this court will have to base its decision on. Based on that, it's clear that the husband, Charles Curto, never ratified this agreement, and the wife never had any parent agency to sign on his behalf. We don't know if he had any dementia. We don't know if... I was giving a more universal sense, but what would happen in that case or soon? You didn't answer that question. Well, in a universal... Yeah, I'd be happy to answer it. I mean, I think that... You know, I think there is law in Illinois that would make... You know, I think of a marital... Illinois marital act or marital property. I can't remember the exact title of the act, but she would be responsible for the cost of the nursing home care. But, you know, if the husband isn't aware of what is... of the terms of the contract, that there's an arbitration agreement, that's been signed on his behalf, how, you know, how could he be held to that? I just don't understand how he could be held responsible for the terms of that particular contract. Even if there's no contract signed at all, if there's no written agreement whatsoever and the wife admitted her husband into a nursing home, you know, the wife, the family, the wife and husband are responsible for each other's medical expenses under Illinois law. Family expense act. Under family expense act, yeah. So there's... All right, well, I appreciate your trying to answer that. I mean, that's essentially it. You know, there's... But, you know, I don't want to take up any more of your time because I think everything else has been fully brief. I think it was just the Peterson case and the waiver issue that wasn't... that was brief, but, you know, there were a couple of cases I wanted to point out to you. Again, thank you for your time. Thank you very much, Mr. Friedland. And Ms. Morris, you're going to do the rebuttal. May it please the court. My name is Jennifer Morris. I'm co-counsel for the defendant appellate nursing home. And I thank you for the opportunity for letting me appear before you here today. I believe that you've been presented with very thorough arguments on both sides through the parties' briefs and through the oral arguments here today. But I just wanted to very briefly leave you with this last thought. Of course, we're asking that you reverse the order of the trial court denying the nursing home's motion to compel arbitration. However, if you're inclined to affirm the trial court's decision, I'd ask that you please keep in mind that the trial court's decision was based solely on the pleadings. In that regard, we haven't yet engaged in any written discovery or depositions, you know, different avenues that may reveal a great deal of circumstantial evidence supporting our position, specifically regarding apparent agency and ratification. So we would therefore request that this court's decision reflect that the decision was based solely on the pleadings and not foreclose the opportunity to revisit those arguments after obtaining additional supporting evidence via discovery. Thank you. I have a couple of questions. The first one relates to if someone declines to sign the arbitration agreement, are they allowed admittances to become a resident at the facility? Honestly, I don't know for sure the answer to your question. I would assume so, that they would be allowed still to enter into the nursing home. I don't think that this is any sort of an adhesion contract where it's a do or die. But, you know, again, I have not actually personally spoken to the nursing home about that and how they handle that issue. Okay. And the second question is co-counsel, one of the last things that he said before he sat down is that, you know, in a nursing home, slides the contracts across the desk, that they need some assurance that the person signing them has authority to sign. I guess my question is, doesn't the nursing home, I mean, do you have that opportunity? Would you not seek to either engage the resident or get a power of attorney or get a guardianship order from a court? I don't think that the nursing home has the authority to tell someone that they absolutely have to go get a power of attorney or some sort of legal document. However, I do think that they should, you know, try as much as they can to get that information from the resident wherever possible. And unfortunately, at this point in the record, we just don't have that information. That's something that, you know, we really do hope to glean from discovery and that I think we will find out when we engage in discovery. That being said, what happens if you have a potential resident who does not want nursing home care and maybe can't articulate that and they have a spouse that seeks to place them somewhere that they don't want to be? You're saying that because there's a spousal relationship, that person can... I don't think it's solely the spousal relationship. I think it's also the fact that there may be a medical need. I can't think of very many cases where the nursing home resident actually wants to be there. I think the majority of people would probably prefer to be at home with loved ones, but unfortunately that's not always the case. It's not always available. Sometimes being placed in a nursing home is a last resort for all of the parties, and it's in the resident's best interest to be there. And sometimes I think those decisions need to be made regardless of their personal feelings of wanting to be there or not. And so you think just being married, though, allows someone other than the resident, other than that person, to make the decision of what's in their best interest? Under those circumstances, yes, I would, especially if the person is that physically incapacitated that they can't actually express it. I mean, in that case, no one would ever be able to be placed into a nursing home if the individual was incapacitated. If they hadn't already previously executed a power of attorney, what would happen? They'd be left to suffer at home alone. Go to court and prove your case. Sometimes it might be a little bit more of an emergency situation than that would allow. So under those circumstances, I believe that, yes, that family relationship would be enough to get them admitted into the nursing home and receiving the care that the individual needs. Thank you. Thank you very much, Ms. Morrison. Thank you to all for your arguments today. We will take this matter under advisement and get back to you with a written order. And within a short day, we'll now take a short recess for a panel.